IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

KAYSONE SALY, by and through
his legal guardian, Jaysen Saly,

                    Petitioner,                              OPINION AND ORDER

        v.                                                    26-cv-225-wmc

TODD BLANCHE, Acting U.S. Attorney General,
MARKWAYNE MULLIN, Secretary, U.S.
Department of Homeland Security,
DEPARTMENT OF HOMELAND SECURITY,
TODD LYONS, Acting Director of
Immigration and Customs Enforcement,
IMMIGRATION AND CUSTOMS ENFORCEMENT,
DAVID EASTERWOOD, Director, St. Paul
Field Office, U.S. Immigration and Customs Enforcement, and
MATT IZZARD, Sheriff of Douglas County,

                    Respondents.
_____

Counsel has filed an amended federal habeas corpus petition under 28 U.S.C. § 2241 on behalf of petitioner Kaysone Saly, a non-citizen who has been civilly committed by state courts in Minnesota due to severe mental illness.  (Dkt. #11.)  Now pending before the court are requests by petitioner challenging his recent confinement by immigration officials, and another from respondents asking the court to dismiss the petition as moot.  (Dkts. #36, #41.)  Following this court's initial stay of efforts to expedite petitioner's deportation, both sides have supplemented the record with additional briefing and information about petitioner's status.  For the reasons explained below, this court must now dismiss the petition without prejudice based on a loss of subject matter jurisdiction.

1

BACKGROUND[1]

## A. Petitioner's Immigration History

In 1981, petitioner Kaysone Saly ("Kaysone") was admitted to the United States at the age of two as a refugee from Laos. In 1987, he was granted lawful permanent resident status. Now 46-years-old, petitioner has a long diagnostic history of severe schizophrenia and bipolar disorder that requires psychiatric medication at a specific time each day to keep him mentally stable. At this point, the difficulties associated with a failure to adhere to this strict medication regimen are beyond reasonable dispute. Indeed, petitioner has now been found legally incapacitated and civilly committed for treatment during 17 different legal proceedings filed in the Minnesota state court system between 2006 and 2025.

Unfortunately, during this time, petitioner has also accumulated a criminal record adversely impacting his immigration status. In 1998, petitioner was convicted of 3rd degree burglary in Hamilton County, Iowa, then sentenced to five years' confinement. In 1999, petitioner was convicted of theft, and in 2001, of cocaine possession, both in Hennepin County, Minnesota. Finally, in 2004, petitioner was convicted of forgery in Davis County, Utah.

On September 22, 2010, petitioner was served with a Form I-862 Notice to Appear ("NTA") for removal proceedings under Section 237(a)(2)(A) of the Immigration and Nationality Act ("INA"), alleging that he was deportable because of his sentence of more

---

[1] Unless otherwise indicated, the facts set forth in this section are undisputed by the parties.

than one year imprisonment for his 1998 burglary offense, which qualified as an aggravated felony under Section 101(a)(43)(G) of the INA, and his 2001 conviction for cocaine possession, which qualified as a controlled-substance offense as defined under 21 U.S.C. § 802. (Dkt. #40-2.) While appearing for his first hearing before the immigration court on January 21, 2011, petitioner was unable to appear at subsequent hearings held on November 17, 2011, and June 14, 2012, because at those times, he had already been civilly committed as mentally ill and put under the influence of neuroleptic medication as authorized by state court. However, because petitioner did not appear at the June 14 hearing in particular, the immigration court ordered him removed *in absentia*, an order that became final after no appeal was filed.

Despite this 2012 removal order, however, immigration officials continued to renew petitioner's permanent-resident status even as he continued to incur criminal offenses in Minnesota state court. For example, in 2013, petitioner was convicted of stalking; in 2019, he was convicted of trespassing and first-degree damage to property; and in 2020, he was convicted of theft, all in Hennepin County. He was also convicted of four separate offenses in 2023 for criminal trespass, fifth-degree possession of marijuana, and theft (two counts) in Scott, Anoka, and Ramsey Counties, respectively. Petitioner was later arrested four more times in 2024 on charges of theft, trespass, tampering with a motor vehicle, and fleeing a police officer. Finally, in 2025, petitioner was again found legally incapacitated by a Minnesota state court in Hennepin County. At that time, petitioner's brother Jaysen was appointed his legal guardian for a term of five years, and petitioner was once again civilly committed as mentally ill.

On March 10, 2026, while residing at a supervised mental health facility in Two Harbors, Minnesota, petitioner next encountered local police after allegedly making harassing and threatening calls to an auto dealership. Later that same day, ICE officers proceeded to arrest petitioner at that facility, ostensibly under a Form I-200 administrative warrant (dkt. #26-2), which itself purports to be based on the final order of removal *in absentia* entered against him in 2012 (dkt. #26-3). Since then, petitioner has been confined under the post-removal order detention statute, 8 U.S.C. § 1231, which authorizes detention of noncitizens with final orders of removal for 90 days (generally referred to as the "removal period"). *Id*. at § 1231(a)(1)-(2).

**B. Petitioner's Federal Habeas Proceeding**

While confined by ICE at the Douglas County Jail in Superior, Wisconsin, petitioner's legal guardian filed a pro se petition on his behalf for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that: (1) petitioner was not being provided necessary medication for his mental health; (2) detention officials were refusing to communicate with his legal guardian or mental health providers; and (3) petitioner was being detained without legal basis, access to counsel, and in violation of due process. (Dkt. #1.) Because it was alleged that petitioner lacked legal capacity and could not proceed pro se, the court recruited pro bono counsel to represent petitioner and granted leave to amend the petition. (Dkts. ##8-9.)

Operating from the assumption that respondents had revoked conditions of supervised release when they arrested petitioner on March 10, the amended federal habeas corpus petition now asserts the following counts or claims for relief:

1. Petitioner's continued detention under the order of removal *in absentia* entered in 2012 contravenes the post-removal order detention statute, 8 U.S.C. § 1231, because the 90-day period for his removal has expired and his removal is not significantly likely to occur in the reasonably foreseeable future.  (Dkt. #11, ¶¶ 221-224.)

2. Petitioner's continued detention violates the Administrative Procedures Act and *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (the "*Accardi* doctrine),[2] because:  (a) the revocation of his supervised release and re-detention was not in compliance with applicable regulations found in 8 C.F.R. § 241.4; (b) respondents have not pointed to a refusal by petitioner to comply with the terms of his supervised release; and (c) continued detention is unreasonable and a violation of 8 C.F.R. § 241.13 since removal is not reasonably foreseeable or imminent.  (Dkt. #11, ¶¶ 227-244.)

3. Petitioner's continued confinement violates the right to substantive due process guaranteed by the Fifth Amendment because the statutory removal period has expired and his removal is not reasonably foreseeable. (*Id*. at ¶¶ 246-257.)

4. Petitioner was denied procedural due process in connection with his "sudden and continuing detention" because:  (a) he was denied a meaningful opportunity to demonstrate that he should not be detained; (b) respondents refused to communicate with petitioner's legal guardian despite his legal incapacity; and (c) there was no prior notice, showing of changed circumstances, or an opportunity to respond before his supervised release was revoked.  (*Id*. at ¶¶ 260-265.)

5. Respondents violated the APA by revoking petitioner's order of supervision without articulating the facts that formed the basis for that decision or establishing a rational connection between the decision and those facts.  (*Id*. at ¶¶ 267-271.)

6. Petitioner's ongoing detention violates substantive due process because respondents denied him adequate mental health care following his arrest,

---

[2] Federal agencies are required by the *Accardi* doctrine to follow their own rules and regulations. 347 U.S. at 267-68 (holding that the Board of Immigration Appeals was required to follow its own regulations governing deportation proceedings); *see also Zelaya Diaz v. Rosen*, 986 F.3d 687, 692 (7th Cir. 2021) (under *Accardi* and its progeny, "federal agencies are required to follow their own regulations and some other formally adopted procedures, including those that govern exercises of an agency's discretion").

resulting in conditions of confinement that were unduly punitive. (*Id.* at ¶¶ 274-282.)

Petitioner sought relief in the form of a court order directing respondents to release him directly to the custody of his guardian under an order of supervision or other conditions set by the court. (*Id.* at ¶¶ 214, 219.)

On May 4, 2026, the court granted an emergency temporary restraining order following a telephonic hearing, having found that: (1) petitioner had a substantial likelihood of success on his claim that the government lacked authority to detain him under 8 U.S.C. § 1231, based on its order of removal *in absentia* entered more than a decade ago; and (2) petitioner suffered irreparable harm given that "despite his severe mental illnesses and legal incapacitation, the government concedes it moved petitioner twice since his initial detention, each such move appearing to be without input from his counsel, legal guardian, or mental health providers" and causing interruptions in necessary, consistent medications. (Dkt. #28, at 1-2.) The court also noted further that the government was unable to articulate how petitioner's ongoing treatment comported with ICE Policy Directive 11063.2, which governs detention of "Individuals with Serious Mental Disorders or Conditions and/or Who are Determined to Be Incompetent by An Immigration Judge." (Dkt. #28, at 2.) Under that policy, ICE should have ensured that petitioner was screened for mental illness upon his detention and presented him to an immigration judge for a competency determination. (*Id.*)

In granting a temporary restraining order, the court specifically required that respondents immediately return petitioner to the Sherburne County Jail in Elk River, Minnesota, to ensure continuity of treatment, including mental health screening and

medication for his diagnosed mental illness. (*Id*. at 2-3.) The court further temporarily restrained respondents from: (1) moving petitioner without providing 72 hours' notice to his counsel and legal guardian; and (2) "removing petitioner from the United States without further order of this court." (*Id*. at 3.) The case was then set for a preliminary injunction hearing in early June.

## C. Changed Circumstances

Before the court could hold the preliminary injunction hearing, however, the parties filed a joint motion for a continuance to allow an immigration judge in Minnesota time to rule on petitioner's pending motion to reopen the proceedings that had resulted in the 2012 order of removal *in absentia*. (Dkt. #34.) The parties also agreed that if the immigration judge granted the motion to reopen, petitioner's removal order would be vacated, and his federal habeas petition would be rendered moot because the statutory authority for his detention would shift. (*Id*. at 2-3.) Finally, the parties agreed to submit a joint status report within five business days of the immigration judge's decision on reopening, in which they would propose a briefing schedule and dates for a preliminary injunction hearing or jointly stipulate to dismissal of the case, and if necessary, allowing petitioner to file a new habeas petition in the appropriate jurisdiction. (*Id*. at 3.)

The court granted this joint motion to continue, striking the June preliminary injunction hearing date while keeping the temporary restraining order in place. (Dkt. #35.) The court also ordered that, within five business days of the immigration court's ruling on petitioner's motion to reopen, the parties "shall either (a) submit a joint status

7

report with a proposed revised briefing schedule and possible dates for a preliminary injunction hearing or (b) jointly stipulate to dismiss the case." (*Id*.)

On June 12, 2026, petitioner unilaterally asked this court to grant his habeas petition without further hearing and order his release to the Hennepin County Medical Center consistent with a plan for hospitalization that his legal guardian had procured through the Minnesota civil commitment process. (Dkt. # 36.)  Specifically, a state court judge in Hennepin County revoked petitioner's conditional discharge in his civil commitment case on June 10, 2026, to facilitate his immediate return to the Hennepin County Medical Center's Psychiatric Ward.  (*Id*. at 1; Exhs. AA-DD to 3rd Anderson Decl. (dkts. ##37-2 through 37-5).)

Given the Minnesota court's decision to re-commit petitioner for mental health treatment, this court issued an order directing respondents to show cause why the petition could not be granted.  (Dkt. #38.)  In reply, respondents pointed out that the immigration court issued an order reopening petitioner's removal proceeding on June 2, 2026 (Ex. A, Order of the Immigration Judge, Dkt. #40-1, at 4), effectively vacating the 2012 order of removal *in absentia* and putting petitioner back in removal proceedings before an immigration judge in Minnesota.  (Dkt. #41, at 4.)  As a result, respondents argue that petitioner's ongoing detention becomes subject to 8 U.S.C. § 1226(c) and is mandatory for non-citizens convicted of certain crimes.

### D. Petitioner's Reopened Removal Proceedings

Petitioner has been represented in his reopened removal proceedings by Minnesota attorney Anne Carleson ("immigration counsel").  On June 8, 2026, ICE amended the

Form I-862 NTA that was originally issued to petitioner in 2010, specifying that he must appear before the immigration judge to face additional charges of deportability. (Ex. B, NTA, Dkt. #40-2, at 4.) In addition to the original charges that were based on petitioner's 1998 burglary conviction and 2001 conviction for cocaine possession, the charges asserted in the amended NTA also include his 1999 conviction for theft in Hennepin County and his 2004 conviction for forgery in Davis County, Utah, which are considered crimes of moral turpitude for purposes of removal.

Now that petitioner's immigration proceedings have re-opened, respondents argue that his habeas proceeding should be dismissed as moot because he is no longer in custody pursuant to the order of removal *in absentia* or the post-final removal order statute, 8 U.S.C. § 1231. (Dkt. #41, at 5.) Further, his immigration counsel has since advised that the immigration court held a competency hearing for petitioner on June 18, 2026, and made an oral finding of incompetency to proceed. (Carlson Decl. (dkt. #45) ¶¶ 3-4.) Nevertheless, on June 26, petitioner was transferred from the Sherburne County Jail to the Central Louisiana Processing Center. (Northwood Decl. (dkt. #50) ¶¶ 13-15.)

The following day, petitioner was transferred to the Krome North ICE facility in Miami-Dade, Florida, for transfer to Larkin Community Hospital Behavioral Health Services, where he is purportedly receiving psychiatric care. (*Id*. at ¶¶ 16-17.) While Larkin is neither an ICE facility nor a jail, petitioner remains in ICE custody while hospitalized there. (Dkt. #49-1, at 3.) Respondents argue this transfer is consistent with ICE Policy Directive 110632.2, which governs the treatment of mentally ill non-citizens in removal proceedings, because "no less than three medical/mental health professionals agreed that

9

he needed a higher level of care than what Sherburne County Jail could offer." (Northwood Decl. (dkt. #50) ¶ 5.)

OPINION

A district court may grant a writ of habeas corpus if the petitioner shows that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). "[T]he traditional function of the writ is to secure release from illegal custody." *Prieser v. Rodriguez*, 411 U.S. 475, 484 (1973). Thus, habeas proceedings under § 2241 are an appropriate mechanism for immigrants in removal proceedings to challenge their ongoing detention. *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001); *Demore v. Kim*, 538 U.S. 510, 516-17 (2003). However, the burden remains on petitioner to show that his detention is unlawful and that he is entitled to habeas corpus relief under § 2241(c)(3). *Ochoa Ochoa v. Noem*, No. 25CV10865, 2025 WL 2938779, at *2 (N.D. Ill. Oct. 16, 2025) (citing *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

## I.    Claims 2, 4, and 5: Unlawful Revocation of Supervised Release

Respondent argues that the petition should be dismissed for several reasons. With respect to petitioner's claims 2, 4, and 5, which take issue with the revocation of his supervised release, respondents note that he was never detained or released under terms of supervision following the order of removal *in absentia* entered against him in 2012. (Dkt. #25, at 5.) As a result, respondents assert that all of petitioner's claims questioning his alleged "re-detention" and revocation of supervised release on March 10, 2026, at best mischaracterize this status. Indeed, petitioner's habeas counsel acknowledge that these

10

claims were based on a misunderstanding about petitioner's status, since petitioner's incompetency renders him unable to communicate about the facts and procedural history of his past or present detention. (Dkt. #30, at 2.) Regardless, because petitioner has abandoned claims 2, 4, and 5, they must be dismissed.

## II.    Claims 1 and 3: Wrongful Detention Under 8 U.S.C. § 1231

Regarding petitioner's Claims 1 and 3, which challenge his confinement under the post-removal order statute, 8 U.S.C. § 1231, respondent argues that these claims must also be dismissed as moot since he is no longer in custody under that statute. (Dkt. #41, at 4-5.) As noted above, since petitioner's 2012 order of removal *in absentia* was vacated on June 2, 2026, when the immigration judge granted petitioner's motion to reopen, respondents have the better of the argument that petitioner is no longer being legally detained under § 1231 pursuant a final order of removal. *See Bronisz v. Ashcroft*, 378 F.3d 632, 637 (7th Cir. 2004) ("[T]he grant of a motion to reopen vacates the previous order of deportation or removal and reinstates the previously terminated immigration proceedings."). Instead, petitioner is now back in removal proceedings, with his detention governed by 8 U.S.C. § 1226(c)(1)(B) (detention during removal proceedings is mandatory for any alien who "is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of [United States Code Title 8]"). If nothing else, as discussed above, there appears no viable dispute that both the original and amended NTAs issued by ICE *assert* that petitioner is subject to removal due to criminal convictions covered by § 1226(c)(1)(B), making his detention mandatory while his removal proceedings continue.

Such a change in the statutory basis for a non-citizen's detention can be an intervening circumstance that deprives a petitioner of a legally cognizable interest at any point during the litigation, rendering a habeas corpus petition effectively moot. *See Vasenin v. English*, No. 3:25-CV-895, 2025 WL 3525037, at \*2 (N.D. Ind. Dec. 9, 2025) (citing *Wang v. Ashcroft*, 320 F.3d 130, 147 (2d Cir. 2003) (holding due process claims under § 1226 to be moot when statutory basis for detention shifts to post-final-order detention under § 1231)); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 726-27 (2013). Thus, while petitioner previously may have *had* a cognizable claim that his detention under § 1231 was unlawful, that claim now appears moot.[3]

While petitioner acknowledges that the statutory basis for his confinement has changed, he disputes that his petition in this court is now moot given the constitutional claims raised. In particular, he argues that ICE agents wrongfully arrested him pursuant to an invalid Form I-200 administrative warrant and wrongfully detained him under § 1231, neither of which ever applied to him given that his order of removal *in absentia* was entered long ago. Indeed, as this court acknowledged when granting a TRO in petitioner's favor, other courts have found that § 1231 does not provide authority to detain a noncitizen years after an *in absentia* order of removal has become final. *See Diallo v. Joyce*, 817 F. Supp. 3d 202, 204 (S.D.N.Y. 2025); *Parra v. Favro*, No. 9:26-cv-363, 2026 WL 1300870, at \*4 (N.D.N.Y. April 16, 2026).

---

[3] The U.S. Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies," U.S. Const. Art. III, § 2, which "demand[s] that 'an actual controversy . . . be extant'" through *all stages* of federal judicial proceedings. *Campbell-Ewald v. Gomez*, 577 U.S. 153, 160 (2016) (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997)).

However, respondents argue that issues with the validity of petitioner's arrest are now beside the point because, whether or not his initial detention was unauthorized, he is now subject to mandatory detention during his re-opened immigration proceedings under § 1226(c)(1)(B). Therefore, respondents argue any previous error has been cured with the re-opening of petitioner's removal proceedings. While petitioner disagrees and cites to several district court cases holding that a non-citizen *is* entitled to habeas corpus relief and release from custody where their underlying arrest was *not* based on a valid warrant executed by ICE before the arrest occurred, none of those cases appear to have involved a noncitizen with a criminal history who is subject to mandatory detention under § 1226(c). *E.g., Diallo*, 817 F. Supp. 3d at 204; *Parra*, 2026 WL 1030870, at *6; *Inti C.-L. v. Blanche*, No. 26-cv-2777 (D. Minn. June 9, 2026) (ECF Dkt. #10); *Sisalema Rea v. Ball*, No. 9:26-cv-01248, 2026 WL 1959270 (N.D.N.Y. July 2, 2026). Because these cases are distinguishable, petitioner fails to show that irregularities with the warrant obtained by ICE form a basis for relief.

Petitioner argues further that respondents violated his rights by serving the administrative warrant for his arrest on him while he lacked competency and by not serving that warrant on his legal guardian or the warden of the jail where petitioner was detained following his arrest on March 10, 2026, in violation of procedural safeguards put in place by the Board of Immigration Appeals itself. (Dkt. #47, at 5.) In contrast to criminal prosecutions, removal proceedings may go forward against a noncitizen who lacks competency, *Brue v. Gonzales*, 464 F.3d 1227, 1233 (10th Cir. 2006), provided that there are adequate safeguards "to protect the rights and privileges of the alien." 8 U.S.C.

13

§ 1229a(b)(3); *see also In re M-A-M-*, 25 I. & N. Dec. 474, 482-83 (BIA 2011) (discussing safeguards). Specifically, an immigration judge may not accept any *admission of removability* from an unrepresented non-citizen who is deemed incompetent. An incompetent non-citizen is further required to have an "attorney, near relative, or friend" appear on his behalf after being served with the NTA. *M-A-M-*, 25 I. & N. Dec. at 482 (citing 8 C.F.R. §§ 1240.4, 1240.10(c), 1240.43). "If such a person cannot be found or fails or refuses to appear, the regulations provide that the [non-citizen's] custodian 'shall be requested to appear on behalf of the respondent.'" *Id*. (citing 8 C.F.R.

There is ample evidence in this case that ICE agents removed petitioner from a supervised mental health facility without notice to his legally appointed guardian, and thereafter refused to communicate with his guardian about petitioner's status. To the extent that petitioner argues persuasively that respondents and their agents have trampled upon safeguards required for non-citizens with competency issues, however, petitioner cites no authority (and the court has found none) ruling that habeas relief is available for violations of this kind. To the contrary, available authority suggests that a noncitizen must challenge the adequacy of required procedural safeguards before the BIA, at least after an order of removal has been entered, or if necessary, in the event of a petition for review by a court of appeals. *Reid v. Bondi*, 132 F.4th 109, 125 (2d Cir. 2024). Regardless, petitioner's claims challenging the legality of his detention under § 1231 must at the end of the day be dismissed as moot, because once again his detention is currently mandatory under 8 U.S.C. § 1226(c).

14

### III.    Claim 6: Conditions of Confinement

Finally, petitioner argues that his claim concerning respondents' failure to adequately treat his mental illness is not moot and is capable of redress in a habeas petition. Specifically, petitioner claims entitlement to relief under the Fifth Amendment, which guarantees that civil detainees *including non-citizens* may not be subject to conditions of confinement that "amount to punishment." (Dkt. #11, ¶ 179.)  Typically, a petition for a writ of habeas corpus is appropriate under 28 U.S.C. § 2241 when a prisoner is challenging the *fact or duration* of his confinement, while claims challenging the *conditions* of confinement are properly heard in a civil rights action.  *Preiser*, 411 U.S. at 490. Accordingly, in most circumstances, the Seventh Circuit has held that a claim based on unconstitutional conditions of confinement is not properly asserted in a habeas corpus proceeding.  *See Robinson v. Sherrod*, 631 F.3d 839, 840-841 (7th Cir. 2011) (recognizing the "long-standing view that habeas corpus is not a permissible route for challenging prison conditions" that do not bear on the duration of confinement); *see also Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005) (concluding that because "release from custody is not an option" for a claim that "medical treatment amounts to cruel and unusual punishment" in violation of the Eighth Amendment, it cannot be addressed in a habeas proceedings).

In fairness, however, the Seventh Circuit *has* recognized that "the Supreme Court left the door open a crack for prisoners to use habeas corpus to challenge a condition of confinement" that directly affects the duration of his confinement.  *Robinson*, 631 F.3d at 840 (internal quotation marks and citations omitted).  Thus, to the extent that the challenged conditions of confinement adversely affect the fact or the duration of his

confinement, the court will consider petitioner's claim for habeas relief. *See Ochoa v. Kolitwenzew*, 464 F. Supp. 3d 972, 981-82 (C.D. Ill. 2020) (concluding that an immigration detainee with asthma was entitled to bring a habeas corpus claim challenging the constitutionality of his conditions of confinement during the COVID-19 pandemic).

Whether he is entitled to that relief, however, is another matter. In particular, claims concerning conditions of confinement by a civil immigration detainee are governed by the same due process standard that applies to pretrial detainees. *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325 (3d Cir. 2019); *Ochoa*, 464 F. Supp. 3d at 986 (citing *Belbachir v. Cnty. of McHenry*, 726 F.3d 975, 979 (7th Cir. 2013)). Such claims must be analyzed under the objective-inquiry standard announced in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). To prevail under this standard, a detainee need only show that the alleged conduct or condition was "objectively unreasonable." *Pittman ex rel. Hamilton v. Madison Cnty.*, 108 F.4th 561, 570 (7th Cir. 2024); *see also Miranda v. Cnty. of Lake*, 900 F.3d 335, 353-54 (7th Cir. 2018) (considering also in a case involving denial of medical care whether officials acted "purposefully, knowingly, or perhaps even recklessly" with disregard for the consequences of their actions). Conduct is objectively unreasonable when it is "not rationally related to a legitimate nonpunitive governmental purpose" or the actions "appear excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398 (citation omitted).

Petitioner easily satisfies the showing required for a substantive due process violation as far as his initial confinement in the Douglas County Jail is concerned, since petitioner undisputedly suffers from severe schizophrenia and bipolar disorder, which are

16

expressly listed as serious mental health conditions in respondents' own detention standards. (ICE National Detention Standards ("NDS"), Standard 4.3 (Medical Care) (Revised 2025), Ex. N to Wilson Decl. (dkt. #12-6) at 12). Worse, there is no dispute that respondents removed petitioner from a supervised mental health facility on the night of his arrest and placed him in a county jail facility, where officials failed to adhere to the strict medication regimen required to treat his severe mental illness and maintain his mental stability. (Dkt. #11, ¶¶ 187-188.) The evidence also supports a finding that officials at Douglas County Jail purposefully, knowingly, and recklessly ignored concerns expressed by petitioner's mental health providers *and* his guardian, which again violates ICE's own detention standards that requires "consider[ation of] information submitted by a third party, such as an attorney, family member, or other detainee identifying a detainee with a disability or a detainee's need for an accommodation." (NDS Standard 4.7 (Disability Identification, Assessment, and Accommodation), Ex. O to Wilson Decl. (dkt. #12-7) at 3). That conduct was not only objectively unreasonable, it was reprehensible.

Fortunately, petitioner is no longer being held at the Douglas County Jail. Indeed, he is not presently being held at a jail facility at all. Instead, he is now being kept at Larkin Community Hospital in Florida for psychiatric care after being screened for mental illness and found incompetent by an immigration court. While no great cause for commendation, therefore, petitioner appears currently to be receiving mental health treatment as required by ICE Policy Directive 11063.2, which governs detention of persons in removal proceedings with serious mental disorders. Because there is no allegation that petitioner is being denied adequate mental health care at his current facility, nor that his placement at

Larkin Community Hospital was in any way objectively unreasonable, it appears that there is no longer anything this court can remedy in a federal habeas corpus proceeding with respect to his conditions of confinement. *See Aslin v. Fin. Indus. Regul. Auth., Inc.*, 704 F.3d 475, 477-78 (7th Cir. 2013) (a case becomes moot and must be dismissed when "there is no longer any ongoing wrongdoing to remedy").

Accordingly, by virtue of changed circumstances, petitioner's conditions-of-confinement claim is also moot, and the amended petition must be dismissed for lack of subject matter jurisdiction. The court would consider reinstating this case, however, if petitioner should ever find himself in custody at Douglas County Jail or another facility within the Western District of Wisconsin and subjected to the same objectively unreasonable conditions of confinement described in the amended petition.

## ORDER

IT IS ORDERED THAT:

1) The amended petition for a federal writ of habeas corpus filed on behalf of Kaysone Saly (dkt. #11) is DISMISSED without prejudice for lack of jurisdiction.

2) The clerk of court is directed to enter judgment and close this case.

Entered this 10th day of August, 2026.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

18